UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



ADRIANNE JONES MCCAIN,

**Plaintiff,**

v.  4:11CV69

MICHAEL J. ASTRUE, COMMISSIONER,
Social Security Administration,

**Defendant.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Adrianne Jones McCain ("McCain" or "Plaintiff") brought this action under 42 U.S.C. §§ 1383(c)(3) and 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act. By order filed July 14, 2011, this action was referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

## I. PROCEDURAL BACKGROUND

On September 10, 2007, McCain filed an application for DIB, alleging disability beginning May 23, 2007, due to adhesive capsulitis and rotator cuff impingement syndrome, and degenerative join disease. (R. 27, 122, 145). The Commissioner denied her application initially (R. 81-89), and upon reconsideration, (R.93-98). McCain requested a hearing which was conducted held on March 25, 2009. (R. 62-80).

On May 8, 2009, Administrative Law Judge ("ALJ") O. Price Dodson found that plaintiff was not disabled within the meaning of the Social Security Act, and denied her claim for DIB. (R. 38-45). On January 3, 2011, the Appeals Council denied her request for review of the ALJ's decision (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), on April 20, 2011, McCain filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

McCain was born on June 5, 1954, and was fifty-two years at the time of the alleged onset of disability. (R. 66). She was therefore considered a "person closely approaching advanced age" pursuant to 20 C.F.R. §§ 404.1563(c) and 416.963(c) (2009). (R. 66). She finished high school and then attended Licensed Practical Nurse ("LPN") school. (R. 66). She lives with her husband in Hampton, Virginia. (R. 65-66). McCain has a driver's license, but only drives "once in a while" because of her pain. (R. 67).

McCain worked at St. Francis Nursing Center for thirteen years, but stopped after hurting her left shoulder. (R. 21-22, 28). McCain indicated that she had experienced neck pain prior to her shoulder pain, but quit working only when her shoulder was injured. (R. 67-68). Nearly all of McCain's medical treatment and alleged impairments relate to her left shoulder. She is right-handed. (R. 66). As an LPN McCain passed medicines, performed treatments, and moved and changed patients. (R. 67). Now, McCain generally "does nothing." (R. 69). She spends some of her time reading or doing crossword puzzles. Id. Her husband does most of the cooking, cleaning, and yard work, and she will accompany him to the grocery store. (R. 69, 75, 76).

2

McCain testified that she does not require assistance bathing or dressing, except to wash her back. (R. 70).

McCain described her symptoms as "constant pain" in her left shoulder and arm. Id. She indicated that she has difficulty sleeping, and elevates her arm and takes medication to try and relieve her pain. Id. McCain also indicated that she underwent a year of physical therapy off and on, but could not continue because her insurance will not pay for it. (R. 71). She explained that she cannot lift her left arm above her head or put it behind her back, and that she has a dull pain in her neck. (R. 72). McCain also has asthma which is controlled with the use of an inhaler. Id.

McCain testified that she has several side effects from her medications. (R. 73). She gets heart palpitations from her inhaler, drowsy when she takes Vicodin, and nauseous and drowsy with Ibruprofin. (R. 73). These side effects require her to lay down for a couple of hours both in the mid-morning and afternoon. (R. 74). Recently, McCain has been having pain in her right elbow. (R. 75). McCain testified that Dr. J. Dan Elliott is currently treating her shoulder, but that no one is treating her neck at the moment.

McCain initially began treatment for her injured left shoulder with her primary care physician, Gloria M. Jackson, M.D. (R. 325-26). She was prescribed Flexeril, a muscle relaxer. Id. McCain was referred to specialist, Dr. J. Dan Elliott, for further treatment of her shoulder. (R. 291). Notes from her first appointment on May 23, 2007 reflect that Flexeril provided minimal pain relief, but Dr. Elliott noted that McCain had no laxity, no loss of sensation, and that her grip strength was intact and symmetrical. Id. An x-ray showed that no significant bony abnormalities, no significant degenerative joint disease over the AC joint or any joint space

irregularity. (R. 292). Dr. Elliott noted that McCain's symptoms suggested a rotator cuff injury and impingement syndrome, and most likely acute subacromial bursitis. Id. Radiologist, William Wood, M.D. analyzed an MRI taken in June 2007 and found that it was essentially normal. (R. 290). It showed that the supraspinatus tendon was intact, that there was no significant impingement upon the subacromial arch, the subscapularis and infraspinatus tendons were intact, and the long head biceps tendon was in normal position. Id. The MRI also reflected fluid in the biceps tendon sheath, which Dr. Wood characterized as a nonspecific finding. Id. There was no evidence of a rotator cuff tear. (R. 290). Dr. Elliot also examined the MRI results and concluded that it showed inflammation in the subacromial bursa and that signal intensity at the supraspinatus tendon indicated a partial tear. (R. 289).

Dr. Elliott completed a certification of health care provider for the Family and Medical Leave Act on June 21, 2007. (R. 286-288). In it he indicated that conservative treatment had failed, and that McCain should be restricted to light duty work with no lifting because of her shoulder impairment. Id. A follow-up visit on June 27, 2007 with Dr. Elliott reflected positive results from a corticosteroid injection and therapy, and McCain indicated that she was able to sleep better, and continued to work. (R. 285). Dr. Elliott opined that McCain's left rotator cuff tendinopathy was improving, and that she was happy with her progress. Id. McCain's July 30, 2007 follow-up appointment reflected a worsening of her symptoms. (R. 284). Dr. Elliott recommended that she continue therapy, and if problems persist, that she consider a surgical evaluation. Id. Notes from McCain's September 4, 2007 appointment indicate that McCain's left shoulder pain persisted, and she was referred to another specialist, Dr. Douglas A Hampers,

4

M.D. , to discuss surgical options. (R. 283). Dr. Elliott opined at that time McCain was unable to work as a nurse because they have no light duty for her. Id.

McCain met with Dr. Hampers on September 10, 2007 to discuss the possibility of surgery. (R. 280-81). Dr. Hamper described McCain's condition as left shoulder adhesive capsulitis improving with motion. Id. He recommended another six weeks of physical therapy, at which point he expected her to have her full range of motion restored. Id. Dr. Hamper further opined that surgery was not necessary. Id. McCain underwent physical therapy from June 7, 2007 to October 31, 2007 for a total of thirty-three visits before she stopped because of financial reasons. (R. 208-45, 252, 274).

A follow-up visit with Dr. Hamper on October 22, 2007 revealed some improvement with physical therapy. (R. 278). He administered an injection in her shoulder and prescribed additional physical therapy for aggressive range of motion. Id. Dr. Hamper presented McCain with the option for surgery, and she indicated that she wanted to wait as long as possible before deciding to undergo surgery. Id. McCain reported continued pain to Dr. Hamper during visits on December 3, 2007, December 20, 2007, and February 14, 2008, and Dr. Hamper continued to recommend physical therapy. (R. 271-74). A second MRI performed on December 10, 2007 showed mild tendinopathy supraspinatus tendon and mild degenerative changes of the AC joint, which indicated adhesive capsulitis. (R. 275). The MRI showed no evidence of a rotator cuff tear. Id.

On May 19, 2008, McCain saw Dr. Elliot and reported that she felt her shoulder had not improved at all despite a year of treatment. (R. 272). She indicated that she had been administered five corticosteroid injections, and did not want to continue receiving them. Id.

McCain also reported taking Motrin on occasion. Id. Dr. Elliot prescribed McCain more Motrin, and suggested another four to six weeks of additional physical therapy. Id. McCain underwent physical therapy treatment from May to June 2008. (R. 335-53, 356, 363). During a follow-up visit with Dr. Elliott on March 4, 2009, McCain again reported little improvement. (R. 371). She indicated that she could tolerate activity slightly better, but still had discomfort. Id. Dr. Elliot recommended another corticosteroid injection with continued activity, however McCain chose to continue anti-inflammatories and pain medication. Id.

On March 23, 2009 Dr. Elliott completed a Physical Residual Functional Capacity Evaluation for McCain. (R. 366-70). He listed McCain's diagnosis as adhesive capsulitis, and described her left shoulder pain as a "dull ache at rest, sharp with certain positions, and pain at night." (R. 366). Dr. Elliott opined that McCain was able to sit, stand, or walk at least six hours, and was occasionally able to perform postural activities such as twisting, bending, crouching and climbing stairs. (R. 369). He determined that McCain was able to lift less than ten pounds occasionally and ten pounds rarely. (R. 367). Dr. Elliott indicated that McCain was not limited in the use of her right hands, fingers, and arms, nor was she limited in the use of her left hands and fingers. (R. 369). He stated that she was unable to reach overhead with her left arm. Id. Dr. Elliott also opined that McCain would have to take unscheduled breaks, miss work about three days per month, and that her pain interfered with her concentration. (R. 367, 369, 370).

A non-examining state agency physician, Dr. Robert Castle, reviewed McCain's medical records on January 8, 2008. (R. 257-63) In his Physical Residual Functional Capacity Assessment Dr. Castle determined that McCain was capable of lifting twenty pounds occasionally, ten pounds frequently, and had no postural limitations. (R. 257- 63). Dr. Castle

6

opined that McCain's left shoulder pain caused her to have limited range of motion, and he concurred with Dr. Elliott's finding that McCain is able to perform light duty work with limitations in lifting. (R. 262).[1]

A second non-examining state agency physician, Dr. Patricia Staeher, also reviewed McCain's medical records. (R. 265-70). Dr. Staher's Physical Residual Functional Capacity Assessment, dated April 8, 2008, reflected the same physical limitations as Dr. Castle's, and she too, concurred with Dr. Elliott's assessment that McCain could perform light duty work with limitations in lifting. (R. 269).

Additionally, at the hearing the ALJ heard testimony from a Vocational Expert ("VE") who indicated that McCain's past work as a licensed practical nurse is considered medium, skilled work. (R. 78). The VE testified that McCain's skills would transfer as a medical receptionist, which is semi-skilled, sedentary work. Id. The VE noted that a person of the same age, education, and work background as McCain, who would be capable of light work limited such that the individual does not lift or reach above her head with the non-dominant extremity, could perform a number of unskilled, light jobs. Id. These jobs included parking lot cashier and mail sorter. Id. The VE also testified that if an individual had all of the limitations described by McCain, there would not be any jobs that the individual could perform. Id. The VE stated that the positions she mentioned – medical receptionist, parking lot cashier, and mail sorter – are full-time jobs that would require the individual to be present five days a week for eight hours a day. (R. 79).

---

[1] While Dr. Elliot's findings do not explicitly state that McCain was capable of light duty work with limitations, his assessment is consistent with the light duty work standard in 20 C.F.R. 404.1567(b).

## III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

---

[2] "The issue ... therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

8


## IV. ANALYSIS

To qualify for disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[3] 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

---

[3] The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2. However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a VE to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10, 1983 WL 31251 (S.S.A.).

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

### A. ALJ's Decision

In the present case, the ALJ made the following findings under the five-part analysis: (1) McCain has engaged in substantial gainful activity since May 23, 2007, the alleged onset date;[4] (2) she has a severe impairment of adhesive capsulitis of the left shoulder; (3) her impairment (or combination of impairments) did not meet or medically equal one of the listed impairments in

---

[4] The ALJ noted that the plaintiff had substantial employment after the alleged onset date however, no specific finding regarding the date(s) of employment was necessary based on his finding that McCain was not disabled.

Appendix 1; (4) McCain has the RFC to perform to perform light work as defined in 20 C.F.R. 404.1567(b) except that she cannot do work that involves reaching or lifting above her head, or pushing or pulling with her non-dominant left upper extremity. (R.29-30).

In her motion for summary judgment, McCain alleges that the ALJ's decision is not supported by substantial evidence because the ALJ improperly evaluated the medical evidence. In her only argument to this Court, McCain alleges that the ALJ ignored the functional assessment of her treating physician, Dr. Elliot, when fashioning the limitations in McCain's RFC, despite the ALJ's statement that he gave the opinion strong weight.

**B.    Substantial evidence supports the ALJ's determination that McCain has the RFC to perform to perform light work as defined in 20 C.F.R. 404.1567(b) except that she can do work that does not involve reaching or lifting above her head, or pushing or pulling with her non-dominant left upper extremity.**

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 416.929(a). Under both federal regulations and Fourth Circuit precedent, McCain must first satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 416.929(b); Craig, 76 F.3d at 594 and 595.

The ALJ must then evaluate the intensity and persistence of McCain' symptoms and the extent to which they affect her ability to work. 20 C.F.R. § 416.929(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the claimant's history, including the claimant's own statements, Id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm,

11

sensory deficit or motor disruption," Id. at § 416.929(c)(2); and (3) other evidence submitted by the claimant relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, Id. at § 416.929(c)(3).

Here, the ALJ followed this two-step inquiry. The ALJ found that McCain had a severe impairment of adhesive capsulitis of the left shoulder. (R. 31). He further determined that McCain's impairment could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they are inconsistent with the RFC determined in the ALJ's opinion. (R. 31).

In this case, the ALJ found that McCain has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b). (R. 30). 20 C.F.R. 404.1567(b) defines light work, in part, as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The ALJ also noted that the McCain must avoid work that would require her to reach, lift, or push or pull with her non-dominant left upper extremity. (R. 30). The ALJ further found that considering McCain's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (R. 33).

In her Motion for Summary Judgment and Reply brief, McCain asserts that, despite affording Dr. Elliott's opinion "strong weight," the ALJ ignored Dr. Elliott's assessment of her limitations when determining her RFC. (Pl.'s Mot. Sum. J., ECF No. 10 at 9). McCain asserts that the ALJ disregarded Dr. Elliott's determination that McCain could only occasionally lift less

than ten pounds and rarely lift ten pounds, that her pain interfered with concentration, and that she would require unscheduled breaks and approximately three absences per month. Id. at 9-11. McCain asserts that the ALJ improperly gave "great weight" to the opinions of the two non-examining state agency physicians. She contends that "the ALJ cannot simply 'pick and choose' from the evidence that favors his decision" and that "the ALJ is obligated to explain why he adopted Dr. Elliott's assessment that Ms. McCain's impairments do not preclude her from all work activity but chose not to incorporate the limitations set forth by Dr. Elliott in the same opinion." (ECF No. 13 at 4).

In making the RFC determination, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. Generally, the opinion of a treating physician is accorded more weight than that of a non-examining consultant. 20 C.F.R. § 416.927(d)(1). Under the federal regulations and Fourth Circuit case law, a treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. at §§ 416.927(d)(2) and 1527(d)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. When the evidence is such that reasonable minds could differ as to whether a claimant is disabled, the ALJ, and ultimately the Commissioner, must resolve any inconsistencies in the evidence. Johnson v. Barnhart, 434 F. 3d 650, 653 (4th Cir. 2005).

13

Here, the ALJ properly evaluated the opinions of the medical providers and provided reasons for his assessment, and the undersigned finds no error in that assessment. The ALJ carefully, and with great detail, considered McCain's own testimony, her physicians' assessments, those of the non-examining agency physicians, and the objective medical evidence. The ALJ discussed McCain's April 2007, May 2007, December 2007, June 2008, and March 2009 appointments with Dr. Elliott. He referred to Dr. Elliott's relatively conservative treatment-- prescriptions for mild medication (Motrin), injections, and physical therapy, which provided some relief. (R. 31). The ALJ noted that McCain retained full range of motion of the cervical vertebra, with no significant spinous process or tenderness of the cervical and thoracic spine. Id. He discussed the fact that McCain showed no significant muscular atrophy over the paraspinal muscles, full range of motion and muscle strength of the lower extremities, and a normal gait as reflected in Dr. Elliott's notes. Id. The ALJ's opinion also discussed McCain's x-ray and MRI of her left shoulder. He noted that the x-ray reflected no significant bony abnormalities, and no significant degenerative joint disease over the acromioclavicular joint. Id. The ALJ considered the MRI results which indicated that McCain had mild tendinopathy of the left supraspinatus and mild degenerative changes of the acromioclavicular joint. Id. In his opinion, the ALJ also discussed Dr. Hampers' assessment that surgery was not necessary, and McCain's March 2009 appointment with Dr. Elliott in which she reported no significant improvement. (R. 30-31). However, he noted that an examination revealed that McCain's cuff and grip strength were intact with no focal neurovascular compromise, and that Dr. Elliott recommended another injection with continued activity. (R. 31). The ALJ also devoted half a page to recounting McCain's own testimony regarding her left shoulder injury.

In detailing the reasons for his opinion, the ALJ referred to McCain's improvement with physical therapy, conservative treatment, and the fact that her shoulder "is grossly neurovascularly intact." (R. 31). The ALJ discussed Dr. Elliott's assessment including the determination that McCain is able to sit and stand at least six hours out of an eight-hour work day, and that she would require unscheduled breaks and absences three times per month. (R. 31). The ALJ also considered the evaluations of Dr. Castle and Dr. Staehr, the two non-examining state agency physicians. He noted that, like Dr. Elliott, they both determined McCain was capable of light work with reaching limitations pertaining to her left shoulder. (R. 31). Thus, all three physicians—the treating doctor and both non-examining state agency doctors—agree that McCain is capable of light work with limitations regarding her left arm reach. Dr. Elliott's assessment adds further limitations pertaining to absences and breaks. Reaching his ultimate conclusion regarding McCain's RFC, the ALJ stated:

> The undersigned gives great weight to the well-supported assessments by Drs. Castle and Staehr, as the evidence of record indicates the claimant is capable of taking care of her personal needs, and is able to perform activities of daily living with assistance. Although the claimant has pain and stiffness in her left upper extremities, she is able to adequately function using her right arm and hand is not significantly limited as to preclude all work activity. The undersigned gives strong weight to the March 2009 opinion of Dr. Elliott that indicates that the claimant's impairments do not preclude her from all work activity. (R. 31).

Simply because the ALJ did not adopt Dr. Elliott's assessment in full is not to say that his decision was unsubstantiated, nor does it mean that Dr. Elliott's opinion was "rejected" as characterized by McCain. "The ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Johnson v. Barnhart, 434 F. 3d at 654, n. 5 (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.2001)). The ALJ did not "pick and choose" the evidence which supported his decision, rather he extensively discussed all

of the evidence presented in the record. The ALJ devoted two and a half pages of his opinion to recounting McCain's own testimony, her treatment, progress, MRI, x-ray, and notes from both treating physicians. Dr. Elliott's own evaluation indicates that McCain retained 100% function in her left and right hands and fingers, and her grip strength was consistently reported as intact. (R. 272, 284, 292, 369). Similarly, there is no evidence that her left shoulder impairment caused her to experience neck pain. In fact, during a March 2009 appointment, she reported "no significant neck pain" to Dr. Elliott. (R. 272, 284, 371). The ALJ, in accordance with Johnson v. Barnhart, 434 F. 3d 650, exercised his discretion when weighing the opinions of the treating and non-examining doctors, objective medical evidence, and McCain's own testimony. He adequately examined the record, explained the weight afforded to Dr. Elliott's assessment, and therefore his decision is based on substantial evidence.

To the extent McCain contends that the ALJ erred in evaluating her credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). The undersigned finds no error in the ALJ's findings with respect to McCain's credibility.

## V. RECOMMENDATION

Because the ALJ's opinion is supported by substantial evidence, the Court recommends that the Commissioner's motion for summary judgment be GRANTED, McCain's motion for summary judgment be DENIED, and that the final decision of the Commissioner be AFFIRMED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge
Douglas E. Miller
United States Magistrate Judge

Norfolk, Virginia
February 22, 2012

17

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

John Harlow Klein
Montagna Klein Camden LLP
425 Monticello Ave
Norfolk, VA 23510

Joel Eric Wilson
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

*/s/ Deputy Clerk*

February 22, 2012